FILED

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

99 SEP -3 PM 1:04

U.S. DISTRICT COURT
N.D. OF ALABAMA

JESSE LIMBAUGH,                          )

    PLAINTIFF,                          )

V.                                       )        CV98-H-1824-E

CITY OF CHILDERSBURG; ROBERT L. )
HARRIS; JERRY McMILLAN; MARGIE
SANFORD; CINDY TUBBS; HOWARD     )
"BILL" USREY; CHARLES WOODS;
GLENN MITCHELL; and PERRY WOODS,)

    DEFENDANTS.                         )

ENTERED

SEP - 3 1999

## MEMORANDUM OF DECISION

The Court has before it the March 10, 1999 motion of plaintiff Jesse Limbaugh for summary judgment and the July 22, 1999 cross-motion of all defendants for summary judgment. Pursuant to the Court's July 26, 1999 order, both motions were deemed submitted, without oral argument, on August 10, 1999.

### I. Procedural History

Plaintiff Jesse Limbaugh commenced this action on July 16, 1998 by filing a complaint alleging numerous, indistinct violations of his civil rights. On November 6, 1998 the defendants moved to dismiss the complaint under Rule 12 of the Federal Rules of Civil Procedure. Judge William M. Acker, Jr.,

to whom this case was assigned originally, dismissed plaintiff's complaint with leave to amend.   (See Order of November 16, 1998.) On November 30, 1998 plaintiff filed a motion to amend his original complaint, which motion has been deemed plaintiff's amended complaint.   (See Order of Dec. 8, 1998.)   In a December 1, 1998 order Judge Acker recused himself; the case was reassigned first to Judge Robert B. Propst and then to the undersigned.

The December 8, 1998 order defines the scope of plaintiff's amended complaint.   As construed in the December 8, 1998 order, plaintiff's amended complaint  alleges two claims, designated Count A and Count B.   Count A presents a claim under 42 U.S.C. § 1983 through allegations that the defendants, acting under color of law, deprived plaintiff of the equal protection of the laws in the unequal enforcement of Ordinance 810 of the City of Childersburg.   Count B presents a claim under 42 U.S.C. § 1985(3) through allegations that the individual defendants conspired to deprive plaintiff of the equal protection of the laws through the selective enforcement of Ordinance 810 of the City of Childersburg.

On December 8, 1998 the individual defendants also filed a renewed motion to dismiss, which was mooted by the December 8,

2

1998 order.   The defendants filed an answer to the amended complaint on December 28, 1998.

As noted earlier, the parties have also filed cross-motions for summary judgment.   Plaintiff has actually filed two motions for summary judgment, a November 12, 1998 motion and a March 10, 1999 motion.   Plaintiff has also filed an April 15, 1999 brief and June 4, 1999 evidentiary submissions in support of the March 10, 1999 motion for summary judgment.   On June 17, plaintiff filed additional evidentiary submissions in support of the March 10, 1999 motion for summary judgment.   The defendants have responded with a July 22, 1999 motion for summary judgment asserting, in essence, that plaintiff has failed to establish a prima face case for any of plaintiff's claims and that the defendants are immune from suit.   Defendants next filed an August 3, 1999 brief and August 3, 1999 exhibits in support of their motion for summary judgment and an August 10, 1999 response to plaintiff's motion for summary judgment.   Plaintiff countered with August 5, 1999 evidentiary submissions and an August 16, 1999 brief in opposition to defendants' motion for summary judgment.

The volume of evidentiary submissions in this case is both impressive and disheartening.   At various points in the

3

litigation, plaintiff has submitted eleven affidavits[1] and twenty-eight numbered, generally multi-part exhibits. The defendants have met plaintiff's challenge with six lettered exhibits, including a deposition transcript[2] and two affidavits[3] with six numbered, attached exhibits. Unfortunately, most of the evidence submitted in this case is either totally irrelevant or marginally probative at best. The primary focus of the submissions is remote, background information rather than the operative facts and issues of this case.

Plaintiff has been the worse offender. Although the events giving rise to the present suit did not occur until 1997, Plaintiff's exhibit 11 and exhibits 13 through 15 consist of newspaper clippings reporting Ku Klux Klan activity in the late 1970s and election results from the early 1980s. Plaintiff's

---

[1] Plaintiff has executed affidavits dated November 12, 1998; November 30, 1998; March 4, 1999; March 9, 1999; June 4, 1999; June 16, 1999 (affidavit 6); June 16, 1999 (affidavit 7); June 16, 1999 (affidavit 8); June 16, 1999 (affidavit 9); and August 2, 1999. In addition his own affidavits, plaintiff has submitted as exhibit 16 the February 6, 1999 affidavit of Billy Taylor.

[2] The defendants' exhibit F is a transcript of the April 26, 1999 deposition of plaintiff Jesse Limbaugh.

[3] The defendants' exhibit B is the August 3, 1999 affidavit of Glenn Mitchell and the defendants' exhibit C is the August 3, 1999 affidavit of Robert L. Harris.

4

exhibit 16 is an affidavit of Billy Taylor, in which Mr. Taylor

avers that defendant Robert Harris attended a Ku Klux Klan rally

on September 30, 1978.   In a March 4, 1999 affidavit executed by

plaintiff, he reports the "admissions" and "excited utterances"

of numerous persons.   Even though some of the statements reported

may be viewed as relevant, the vast majority of the statements

are not admissions or excited utterances but simply inadmissible

hearsay.   Similarly, plaintiff's exhibit 10, a transcript of tape

recorded conversations with non-parties Thelbert Champion and

Charles Reynolds, is additional, remote background information

not directly bearing on the issues in question.   Likewise, in

plaintiff's affidavit 5, plaintiff reports the declarations of

non-party Lester Cheeks in support of defendant Robert Harris's

alleged involvement in a Ku Klux Klan rally and cross burning on

September 30, 1978.   Plaintiff's exhibit 26 is yet another

example of the irrelevant "evidence" submitted in this case; it

is a photocopied newspaper account of a high school fire in

Cullman County, three counties removed from the site of the

incidents giving rise to the present case.

         However, plaintiff is not alone in making frivolous

submissions; defendants have also engaged in this time-wasting

practice.   The defendants' August 3, 1999 brief begins with a

history of the other litigation between plaintiff and the City of
Childersburg; this information is completely irrelevant.
Defendants' exhibit D contains a copy of the complaint in an
unrelated, pending state court action plaintiff has filed against
the City of Childersburg.  Such submissions serve no legitimate
purpose and simply slow the workings of the Court, which is
forced to sift through the extraneous matter.  The Court could
cite additional examples of the irrelevant or otherwise
inadmissible material submitted in this case but does not wish to
belabor the point further.

**II. Standards for Evaluating a Summary Judgment Motion**

Under Federal Rule of Civil Procedure 56(c), summary
judgment is proper "if the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to judgment
as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322
(1986).  The party asking for summary judgment always bears the
initial responsibility of informing the court of the basis for
its motion and identifying those portions of the pleadings or
filings which it believes demonstrate the absence of a genuine
issue of material fact.  Id. at 323.  Once the moving party has

6

met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial.  Id. at 324.

The substantive law will identify which facts are material and which are irrelevant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.  Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  Id. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward

7

with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. Fitzpatrick, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district

8

court that there is an absence of evidence to support the non-moving party's case.  Fitzpatrick, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  Lewis v. Casey, 518 U.S. 343, 358 (1996) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

### III. Relevant Undisputed Facts

On August 8, 1997, plaintiff Jesse Limbaugh received a notice from the City of Childersburg, Alabama informing Mr. Limbaugh that his real property located at 605 Seventh Street Southwest in the City of Childersburg was in violation of City Ordinance 810.  (See Pl.'s Ex. 1.)  Childersburg Ordinance 810 is a general nuisance ordinance.  (See Ordinance 810 submitted as Pl.'s Ex. 4.)  The August 8, 1997 notice gave plaintiff until September 8, 1997 to abate the alleged violation.  (See Pl.'s Ex. 1.)  On August 14, 1997 plaintiff appealed the notice of

9

violation to the Childersburg City Council; a public hearing was held on August 18, 1997; and at the hearing, plaintiff was referred to the building inspector, defendant Glenn Mitchell, to discuss an extension of time to complete the abatement. Plaintiff received a thirty day extension on September 8, 1997 and another extension on October 14, 1997. (See Ex. 3 to Aff. of Glenn Mitchell.) In November of 1997, plaintiff again appealed to the Childersburg City Council for an extension of time to either complete the work or locate a new residence. (See Pl.'s Ex. 6.)

To date, no additional enforcement actions have been taken against plaintiff or plaintiff's property. (See Dep. of Jesse Limbaugh at 137-41.) However, plaintiff claims that he suffered physical injuries and emotional distress in attempting to abate the violation alleged in the August 8, 1997 notice. (See Compl. at 4.) Furthermore, plaintiff claims that Ordinance 810 was selectively enforced against him and that the selective enforcement was motivated by invidious, discriminatory animus because of plaintiff's physical and mental status (handicapped), plaintiff's religion (Religion of Reality), plaintiff's economic status (poverty), plaintiff's race (mixed), and plaintiff's

10

wife's race (Hispanic).[4]   (See Am. Compl ¶¶ 2-4; Pl.'s Ex. 7.)
The present civil rights action was filed July 16, 1998.

## IV. Applicable Substantive Law and Analysis

Plaintiff's complaint contains the following claims: (1) a
42 U.S.C. § 1983 claim arising from an alleged deprivation of
equal protection under color of law, and (2) a 42 U.S.C. 1985(3)
claim against the individual defendants arising from an alleged
conspiracy to deny plaintiff his constitutional right of equal
protection. (See Order of Dec. 8, 1998 at 2.)  Plaintiff's
motions for summary judgment simply assert that plaintiff is
entitled to judgment as a matter of law.  Defendants' motion for
summary judgment asserts that plaintiff has failed to establish a
prima face case for any of plaintiff's claims against defendants
and that defendants are immune from suit.  The Court will address
each of plaintiff's claims separately, beginning with Count A,
the section 1983 claim.

---

[4] Plaintiff asserts that this animus was directed at him,
in part, because defendant Robert Harris, the Mayor of
Childersburg, and defendant Glenn Mitchell, a Childersburg
building inspector, participated in a Ku Klux Klan rally in 1978
and threatened plaintiff in route to the rally.  Plaintiff took
no action against Harris or Mitchell in 1978. (See Am. Compl ¶
1; Mar. 4, 1999 Aff. of Jesse Limbaugh ¶ 1.)  These alleged
events, however, are simply too remote to be probative of actions
supposedly taken two decades later.

## 1.  COUNT A: 42 U.S.C. § 1983

Count A asserts a section 1983 claim against both the municipal defendant and the individual defendants.  Section 1983 provides a cause of action against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ."  42 U.S.C. § 1983.  The Court will first address the viability of the section 1983 claim against the City of Childersburg.

### A.  The Municipal Defendant

Municipalities are "persons" for the purposes of section 1983 and may be sued directly in a section 1983 action.  See Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 663, 690 (1978) (partially overruling Monroe v. Pape, 365 U.S. 167 (1961)).  However, that liability is not unlimited.  A municipality may not be held liable simply upon a theory of respondeat superior, but a municipality may be held liable for a deprivation of civil rights resulting from a municipal policy or custom, even though the municipality's policymakers have not formally adopted the practice or custom.  See id. at 690-91, 694.

12

The liability of the municipal defendant, therefore, turns upon the existence of a city policy or custom of discriminatory, unequal enforcement of Ordinance 810 in violation of the constitutional right of equal protection of the laws.

Plaintiff asserts that the official actions of the mayor, city council, and city building inspectors in selectively enforcing Ordinance 810 amount to a deprivation of equal protection in accordance with a policy or custom of the City of Childersburg.  Recently the Supreme Court, addressing the question of municipal liability for the actions of a local official, wrote that "it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality."  Board of Comm'rs v. Brown, 520 U.S. 397, 404 (1997).  Instead, "[t]he plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged."  Id.  Although plaintiff has made numerous complaints under Ordinance 810 and has alluded to enforcement actions against a market and a church and has submitted photographic evidence of other properties in Childersburg, the evidence offered simply does not create a factual issue regarding the existence of a policy or custom of discriminatory, selective enforcement of Ordinance 810.  The

13

defendants, in support of their own summary judgment motion and in opposition to plaintiff's motion, have submitted evidence of a policy of equal enforcement of Ordinance 810, which plaintiff's lack of competent evidence regarding unequal enforcement does not refute such as to create a genuine question of material fact. (See Aff. of Robert L. Harris ¶ 3 and attached Ex. 3.)   Because plaintiff has failed to "show that the municipal action was taken with the requisite degree of culpability," the City of Childersburg cannot be held liable under 42 U.S.C. § 1983 for any violation of plaintiff's civil rights that may have occurred in connection with the attempted enforcement of Ordinance 810 against plaintiff.   Brown, 520 U.S. at 404.

## B.   The Individual Defendants

The individual defendants,[5] in their July 22, 1999 motion for summary judgment, assert both absolute and qualified immunity as to plaintiff's section 1983 claim.   Because absolute and qualified immunity present threshold defenses to the maintenance of a section 1983 action, the Court must first determine whether defendants are truly immune from this lawsuit.

The first immunity defense raised by the individual

---

[5] The individual defendants are the mayor, members of the city council, and two building inspectors.

14

defendants is that of absolute legislative immunity. (Defs.'
Mot. for Summ. J. ¶ 3.) Long recognized, absolute legislative
immunity extends to local legislators and other local officials
exercising legislative duties. See Bogan v. Scott-Harris, 523
U.S. 44, 48-55 (1998). See also Executive 100, Inc. v. Martin
County, 922 F.2d 1536, 1539 (11th Cir. 1991); Hernandez v. City
of Lafayette, 643 F.2d 1188, 1193 (5th Cir. Unit A June 1981)
(holding that local legislators enjoy absolute immunity when
performing legislative duties). However, that absolute immunity
is limited to the performance of legislative actions. See Bogan,
523 U.S. at 54 ("Absolute legislative immunity attaches to all
actions taken 'in the sphere of legitimate legislative
activity.'") (quoting Tenney v. Brandhove, 341 U.S. 367, 376
(1951)); Smith v. Lomax, 45 F.3d 402, 404-406 (11th Cir. 1995)
(finding administrative acts not subject to immunity); Ellis v.
Coffee County Bd. of Registrars, 981 F.2d 1185, 1190 (11th Cir.
1993) (stating that the immunity inquiry is whether the
legislators were performing a legislative activity); Yeldell v.
Cooper Green Hosp., Inc., 956 F.2d 1056, 1062 (11th Cir. 1992)
("Only those acts which are 'necessary to preserve the integrity
of the legislative process are protected'") (quoting Unites
States v. Brewster, 408 U.S. 501, 517 (1972)). A legislative

15

action is one that "involves policymaking rather than mere administrative application of existing policies." <u>Crymes v. DeKalb County</u>, 923 F.2d 1482, 1485 (11th Cir. 1991). In determining whether officials acted in a legislative or administrative role, the Court looks to both the facts used in acting and the impact of the actions undertaken. "If the facts utilized in making a decision are specific, rather than general, in nature, then the decision is more likely administrative. Moreover, if the decision impacts specific individuals, rather than the general population, it is more apt to be administrative in nature." <u>Id.</u> (citing <u>Cutting v. Muzzey</u>, 724 F.2d 259, 261 (1st Cir. 1984)).

After examining the actions of the individual defendants in this case, the Court finds that they functioned in an administrative rather than a legislative capacity and, therefore, are not entitled to absolute legislative immunity. Plaintiff does not challenge the enactment of the city's nuisance ordinance[6] but, rather, its attempted enforcement against him.

---

[6] The Court notes that were the challenge to the enactment of the ordinance, then at least the mayor and council would enjoy legislative immunity because voting for or against an ordinance is clearly a legislative activity. <u>See</u> <u>Smith v. Lomax</u>, 45 F.3d 402, 405 (11th Cir. 1995) (citing <u>Espanola Way Corp. v. Meyerson</u>, 690 F.2d 827, 829 (11th Cir. 1982)).

16

(See Dep. of Jesse Limbaugh at 172-73.)  Such enforcement
involves the application of an existing policy to an individual
based upon specific facts and constitutes administrative action.
In short, plaintiff's complaint relates not to legislative or
policymaking activities but to administrative activities of the
individual defendants.   See Crymes, 923 F.2d at 1486 (finding
"the application of [an existing] policy to a specific party" to
be administrative).

Although the individual defendants are not entitled to
absolute immunity, the question of their qualified immunity
remains.   Under the doctrine of qualified immunity, those
"government officials performing discretionary functions,
generally are shielded from liability for civil damages insofar
as their conduct does not violate clearly established statutory
or constitutional rights of which a reasonable person would have
known."   Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).   The
Eleventh Circuit has established a two-pronged test for analyzing
claims of qualified immunity.   First, the defendant claiming
qualified immunity must establish that he or she was exercising
discretionary authority when committing the allegedly improper
act.   Then, the plaintiff must show that the defendant's act
violated the well-settled law.   See Swint v. City of Wadley, 51

17

F.3d 988, 995 (11th Cir. 1995) (quoting Sammons v. Taylor, 967
F.2d 1533, 1539 (11th Cir. 1992)).  Because no question is raised
concerning whether the individual defendants acted within their
official discretion in the enforcement of Ordinance 810, the
qualified immunity analysis depends upon whether plaintiff has
established that the individual defendants violated the settled
constitutional or statutory law.

As noted, plaintiff does not challenge the facial validity
of Ordinance 810; Mr. Limbaugh asserts unequal application
motivated by racial, religious, economic, and physical and mental
condition animus in violation of the Equal Protection Clause of
the Fourteenth Amendment.  The principle is long settled that the
selective or unequal enforcement of a facially neutral law may
give rise to an equal protection violation.  See Yick Wo v.
Hopkins, 118 U.S. 356, 373-74 (1886); Strickland v. Alderman, 74
F.3d 260, 264 (11th Cir. 1996); Zayre v. City of Marietta, 416
F.2d 251, 253-54 (5th Cir. 1969).  In Yick Wo, the United States
Supreme Court, through Justice Matthews, wrote the following:

> Though the law itself be fair on its face, and
> impartial in appearance, yet, if it is applied and
> administered with an evil eye and an unequal hand so as
> practically to make unjust and illegal distinctions
> between persons in similar circumstances, material to
> their rights, the denial of equal justice is still
> within the prohibition of the constitution.

Yick Wo, 118 U.S. at 373-74. An unequal or selective application case requires proof of both disparate treatment in relation to similarly situated persons and a discriminatory purpose for the disparate treatment. See Strickland, 74 F.3d at 264.

Plaintiff has endeavored to show disparate treatment through evidence of his multiple, unheeded complaints of nuisance violations and through photographs of other property in Childersburg but has failed to demonstrate that any of these other purported violators are similarly situated to plaintiff.[7] See id. at 265 (finding that plaintiff was not similarly situated to other property owners because plaintiff had not shown that other property owners violated ordinance as egregiously as plaintiff). Because plaintiff has not shown disparate treatment in comparison to similarly situated persons, which is an essential element of a an equal protection violation, plaintiff has also failed to satisfy the second prong of the Eleventh Circuit's qualified immunity analysis, requiring a showing that the defendants' conduct violated well-settled constitutional law. The individual defendants, therefore, are entitled to assert

---

[7] Indeed, a review of the photographic evidence submitted by plaintiff and defendants tends to confirm that Mr. Limbaugh is not similarly situated to other property owners subject to Ordinance 810.

19

qualified immunity.

Because the individual defendants are entitled to assert qualified immunity and because the municipal defendant may not be held liable, the Court need not give any additional consideration to Count A, plaintiff's section 1983 claim. No genuine issues of material fact remains and all defendants are entitled to judgment as a matter of law on Count A; therefore, summary judgment in favor of all defendants as to Count A is proper.

## 2. COUNT B: 42 U.S.C. § 1985(3)

Plaintiff also asserts a claim against the individual defendants in their individual capacities under 42 U.S.C. § 1985(3) alleging that they conspired to deny the plaintiff his constitutional right to equal protection of the laws. (See Order of Dec. 8, 1998 at 2.) Section 1985(3) provides a civil remedy to one who is injured by "two or more persons . . . conspir[ing], or go[ing] in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . ." 42 U.S.C. 1985(3). Section 1985(3) reaches both private conspiracies and conspiracies under color of law but requires "that there must be some racial, or perhaps

otherwise class-based, invidiously discriminatory animus behind

the conspirators' action." Griffin v. Breckenridge, 403 U.S. 88,

101-102 (1971). Once an invidious motive is established, the

elements of a section 1985(3) action are (1) a conspiracy (2) to

deprive one of equal protection or equal privileges and

immunities (3) in furtherance of which a conspirator acted (4a)

causing damage to the person or property of another or (4b)

causing a deprivation of any right or privilege of a United

States citizen. See id. at 102-103; Johnson v. City of Fort

Lauderdale, 126 F.3d 1372, 1379 (11th Cir. 1997) (citing United

Brotherhood of Carpenters & Joiners v. Scott, 463 U.S. 825, 828-

29 (1983)).

The Court need not consider whether class-based animus

motivated any discrimination against plaintiff or whether

plaintiff is a member of a class entitled to the protection of

section 1985(3) because plaintiff has not established the other

elements of a section 1985(3) claim. Apart from mere

allegations, plaintiff has not demonstrated the existence of a

conspiracy to deprive him of his civil rights. See Fullman v.

Graddick, 739 F.2d 553, 557 (stating that in a conspiracy action,

"mere verification of a party's own conclusory allegations is not

sufficient to oppose a motion for summary judgment"). Nor has

plaintiff shown that he can meet the causation element of section 1985(3) because, as previously discussed, plaintiff has not established a prima facie violation of his equal protection rights arising from the unequal enforcement or non-enforcement of Ordinance 810 against similarly situated persons.  Because no genuine issues of fact remain and because plaintiff's section 1985(3) claim must fail as a matter of law, the individual defendants are entitled to summary judgment.

In conclusion, the Court finds that no material issues of fact remain and that the municipal defendant and all individual defendants are entitled to summary judgment as a matter of law as to all claims asserted by plaintiff.  A separate order will be entered.

DONE this ___3___ day of September, 1999.


_____
SENIOR UNITED STATES DISTRICT JUDGE

22